IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

F. MICHAEL HART, Guardian ad Litem for
JOSE JARAMILLO, an incapacitated person,

                Plaintiff,

vs.                                                         CV 11-0267 MCA/WPL

CORRECTIONS CORPORATION OF
AMERICA, a Foreign Corporation, CIBOLA
COUNTY CORRECTIONAL CENTER, WALT
WELLS, WARDEN, and RODDIE RUSHING,
WARDEN,

                Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S**
***DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY OF**
**DR. NAUSHIRA PANDYA**

COMES NOW, F. Michael Hart, Esq. as Guardian ad Litem for Jose Jaramillo, Plaintiff, by and through his counsel of record, CURTIS & LUCERO, and for Plaintiff's Reply in Support of Plaintiff's *Daubert* Motion to Exclude Expert Testimony of Dr. Naushira Pandya, states as follows:

**I.    INTRODUCTION**

As with Defendant's prior Response concerning Dr. Young, the asserted answer to the challenge to Dr. Pandya as the expert in this case, is to prove she is an expert in something. She is an expert in treating our aged population (Geriatrics) and in treating diabetics (Endocrinology). Neither of these medical conditions are at issue, for the purpose Dr. Pandya is being offered – which is the life-expectancy of a severely brain damaged, quadriparetic, tube-fed, incoherent man confined to a bed in a nursing home in Las Cruces. Simply put, he was not sent to a nursing home at the age of 54 because he

was a diabetic. He was sent there because he contracted Pneumococcal Meningitis, which went unrecognized by the CCA staff, until it spread to his brain, leaving him severely brain damaged.



This is Jose Jaramillo:

Defendant argues that Plaintiff should have to depose Dr. Pandya to know the "evidentiary support" for her opinions. Actually, in the case of Dr. Pandya, Defendant slyly waited until the last minute to set Plaintiff's expert witnesses and then would not make their experts available afterward within the time allotted for discovery. This is of no consequence to this Motion, regardless. Plaintiff has made their experts available and all opinions, their bases and evidence supporting them is fully within the knowledge of Defendants. Defendant's even after this Daubert Motion was filed, have failed to supplement Dr. Pandya's report in a way that would meet the requirements of FRCP 26(a)(2)(B), if there is additional information necessary to determine whether Dr. Pandya's opinion met the requirements of FRE 702 and the case law surrounding it.

All the Court and the Plaintiff have to go on for Dr. Pandya's qualifications and her basis for an expert opinion is what Defendant has provided and that is the appropriate

evidence for consideration by the Court in its "gate-keeper" function. Dr. Pandya, while in expert for some areas, is simply not testifying "within the reasonable confines of his [her] area." See Ralston v. Smith & Nephew Richards, Inc. 275 F3d 965, 970 (10th Cir. 2001).

## II.   AUTHORITY AND ARGUMENT

Liberal interpretation of FRE 702 is appropriate as articulated in Defendant's cited case law in their Response. However, only if "[t]he expert's scientific ... knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" can he give an opinion on an ultimate issue to the jury. Everyone has an opinion. The question here is whether Dr. Pandya is "stay[ing] within the reasonable confines of his subject area." See Defendant's Response, pg. 4, citing *Ralston v. Smith & Nephew Richards, Inc.* 275 F3d 965, 970 (10th Cir. 2001), which is the question the Ralston Court says should be asked to determine qualification and in fact the "fit" of this expert to this question before the jury. The interplay of relevance under FRE 402 and 702 is the basis asking the Court to make sure that if a witness is going to invade the province of the jury by giving evidence of what they believe should be the answer to an ultimate question the jury will be required to answer on the Verdict form, the person giving that opinion evidence must have relevant evidence that will assist the jury because of their scientific or other specialized knowledge. See FRE 702.

Mr. Jaramillo was 52 years old when he was not vaccinated with Pneumovax 23 as required. So, Dr. Pandya's specialized knowledge of geriatrics, is irrelevant. Mr. Jaramillo was a diabetic, but that also is irrelevant to his life-expectancy. Nowhere in Defendant's Response do they attempt to explain how Dr. Pandya's specialized

3

knowledge as a geriatric endocrinologist relates to severely brain damaged men in their 50's.

"The central objective of the district court in any *Daubert* inquiry is and must be to ensure that any expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). Thus, to discharge its *Daubert* gatekeeping responsibility, the district court must take enough steps to confirm that it has "assess[ed] the reasoning and methodology underlying the expert's opinion," *Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009).

Defendant's response fails to address the specific challenge to Dr. Pandya, her qualifications and the disconnect to her "beliefs" regarding diminished life expectancy. Here, a plain reading of Dr. Pandya's report, page 4 (Exhibit "1" attached to Plaintiff's Motion, Docket No. 126) illustrates the lack of qualifications this expert has to arrive at what this experts couches as "believes", in particular experience with a patient population that has Mr. Jaramillo's same neurological complications from meningitis, as well as medical constellations. There is no basis or authority referred to or relied upon for Dr. Pandya's belief that "diabetes alone can reduce life expectancy by almost 10 years." *Id.*

The Supreme Court has explained that when a trial court is "[f]aced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-93, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (citing Fed. R. Evid. 104(a), footnotes omitted). Accordingly, the district court must "[first] determine if the

expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Norris v. Baxter Healthcare Corp.,* 397 F.3d 878, 883-884 (10th Cir. 2005) (quoting *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1232 (10th Cir. 2004)). "In making this determination, the district court must decide 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Id.* at 884 (same). Next, "the district court must further inquire into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Id.* (quoting *Daubert,* 509 U.S. at 597) (footnote omitted).

Defendant's citation to the 1998 opinion in *Vincoy v. USA*, 1998 US Dist. Lexis 23270, while certainly not being precedent post-dates the 10th Circuits 2001 opinion in Ralston v. Richards, 275 F.3d 965 (10th Cir. 2001). The facts in *Vincoy* are completely different – the evidence was that Dr. Handmaker had twenty years of experience working with medically fragile children, and published a comprehensive statistical study on life expectancy of children. *Id.* Dr. Pandya has no similar background. Dr. Pandya has many qualifications about the elderly. 52 years old is not elderly and end of life issues for the elderly are completely different. This is apparent with the lay understanding of the Court. Even more strange yet, is Dr. Pandya's basis for her opinion that is exactly opposite of Defendant's other desired expert, Dr. Young. Defendant's quote Dr. Pandya's report in their Response "Although no studies have been done on life expectancy in patients with neurological complications from meningitis, conclusions from similar patient with traumatic brain injury (TBI) allow us to infer…." This is exactly wrong under the rules of evidence. First, Defendant has to pick either you have to have studies to prove an ultimate issue for an expert or you do not. Second, you

5

cannot equate severe brain damage from invasive pneumococcal disease – meningitis to traumatic brain injury.

One can only assume that all the insults in Defendant's response are to cover for the lack of an actual legal and factual response to Plaintiff's Motion. Plaintiff has merely cited the current case law and Rule of Evidence that controls the admission of expert testimony and under FRE 402 and FRE 702 (a) Dr. Pandya's scientific or other specialized knowledge of the elderly and diabetics will NOT help the jury understand the evidence or to determine a fact in issue in this case; (b) Dr. Pandya's testimony is NOT based on data that is relevant to this case (TBI), or a brain damaged man in his 50's, which she has no specialized knowledge to serve as a basis for an opinion in this case; (c) so Dr. Pandya's testimony cannot be the product of reliable principles and methods; (d) and Dr. Pandya cannot have reliably applied the principles and methods to the facts of this case for the failure to meet primarily (a) and (b) above.

WHEREFORE Plaintiff respectfully requests the Court enter an order excluding Dr. Pandya as a witness at the trial of this matter and for such other relief as the Court finds proper.

        Respectfully submitted,

        CURTIS AND LUCERO
        Electronically Signed

        __/s/ Lisa K. Curtis, Esq.__
        By:    LISA K. CURTIS
                  AMALIA S. LUCERO
                  Attorneys for Plaintiffs
                  301 Gold, S.E.; Suite 201
                  Albuquerque, NM 87102
                  (505) 243-2808

CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of June, 2013, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

                                                        CURTIS AND LUCERO
                                                        Electronically Signed

                                                        _/s/ Lisa K. Curtis, Esq._
                                                By:    LISA K. CURTIS
                                                          AMALIA S. LUCERO
                                                          Attorneys for Plaintiffs
                                                          301 Gold, S.E.; Suite 201
                                                          Albuquerque, NM 87102
                                                          (505) 243-2808

Lisa K. Curtis, Esq.
Amalia S. Lucero, Esq.
CURTIS & LUCERO
301 Gold, SW Suite 201
Albuquerque, New Mexico 87102
*Attorneys for Plaintiff*

Deborah D. Wells, Esq.
Kennedy, Moulton & Wells, P.C.
2201 San Pedro NE #3-200
Albuquerque, New Mexico 87110-4133
Phone: (505) 884-7887
Facsimile: (505) 884-7123
ddwells@kmwpc.com

Daniel P. Struck, Esq.
Christina Retts, Esq.
Struck, Wieneke & Love, P.L.C.
3100 West Ray Road, Suite 300
Chandler, AZ 85226
(480) 420-1600
dstruck@swlfirm.com
cretts@swlfirm.com

*Attorneys for Defendants Corrections Corporation of America,*
*Cibola Correctional Center, Warden Walt Wells and*
*Warden Roddie Rushing*