IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

F. MICHAEL HART, Guardian ad
Litem for JOSE JARAMILLO, an
incapacitated person,

      Plaintiff,

      vs.                      No. 2:11-CV-00267-MCA-WPL

CORRECTIONS CORPORATION OF
AMERICA, a Foreign Corporation,
CIBOLA COUNTY
CORRECTIONAL CENTER, WALT
WELLS, WARDEN, and RODDIE
RUSHING, WARDEN,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Plaintiff's Expedited Motion to Amend Request for Admissions or in the Alternative Allow Plaintiff to File a Late Response*, filed on May 29, 2013. [Doc. 135] Having considered the submissions, the relevant case law, and otherwise being fully advised in the premises, the Court will grant the motion in part and deny it in part.

**I.**     **BACKGROUND**

On February 15, 2011, Plaintiff filed a *Complaint to Recover Damages For Personal Injuries Arising from Medical Malpractice* in the Second Judicial District of the State of New Mexico. [Doc. 1-1] Plaintiff alleged that Jose Jaramillo, an inmate at the

Cibola County Correctional Center, Bureau of Prisons Correctional Institution, contracted pneumococcal meningitis due to Defendants' failure to vaccinate Mr. Jaramillo in violation of the Federal Bureau of Prisons Clinical Practice Guidelines on Preventative Health Care. [Doc. 1-1 at 7]  On March 28, 2011, Defendants removed Plaintiff's *Complaint* to this Court on the basis of diversity jurisdiction. [Doc. 1]

On May 15, 2013, Defendants filed *Defendants' Motion for Summary Judgment* [Doc. 129].  In their motion, Defendants relied on certain facts deemed to be admitted and "conclusively established" under Fed. R. Civ. P. 36(a)(3), because "Plaintiff was served with Defendants' Requests for Admissions on March 9, 2013 and did not respond." [Doc. 129 at 5 n.4]  On May 29, 2013, Plaintiff filed *Plaintiff's Expedited Motion to Amend Request for Admissions or in the Alternative Allow Plaintiff to File a Late Response*.  In his motion, Plaintiff states that he was unaware that he had failed to file a response to Defendants' Request for Admissions "until Plaintiff was responding to Defendant CCA's Motion for Summary Judgment." [Doc. 135 at 1]  Plaintiff admits that he received the Request for Admissions "in regular US mail on March 25, 2013," but "cannot determine why the responses were not served on Defendant CCA within the 33 day time period running from March 22, 2013 and therefore moves this Court for an Order allowing Plaintiff to amend the responses from being 'deemed admitted' or allow Plaintiff to file late responses based on clerical mistake in not responding." [Doc. 135 at 2]  Plaintiff contends that Defendants "will not be prejudiced by allowing Plaintiff to answer the Admissions given that some of them run in direct contradiction if allowed to remain

'deemed admitted' with the testimony of Plaintiff's infectious disease expert." [Doc. 135 at 3]

Defendants respond that they will suffer prejudice if Plaintiff's motion is granted, because discovery is closed and Defendants filed their motion for summary judgment in reliance on the facts deemed to be admitted. [Doc. 151 at 2] Furthermore, Defendants argue that "[w]ithdrawal would not be consistent with presentation of the merits, but would instead contravene: established scientific evidence, undisputed facts, published material by the manufacturer of the vaccine at issue, and would contradict Plaintiff's own expert's testimony." [Doc. 151 at 3]

In his reply brief, Defendant concedes that the facts underlying Request for Admissions numbers 1, 2, 3, 5, and 7 are not in dispute and should be deemed admitted for purposes of trial.[1] [Doc. 166 at 1] However, Plaintiff seeks leave to amend Request

---

[1]Request for Admissions numbers 1, 2, 3, 5, and 7 provide as follows:
1. Admit that there are no laboratory tests results that identify the precise serotype of pneumococcal disease that Mr. Jaramillo is alleged to have contracted.
2. Admit that there are no medical records that identify the precise serotype of pneumococcal disease that Mr. Jaramillo is alleged to have contracted.
3. Admit that no test has been done to identify the precise serotype of pneumococcal disease that Mr. Jaramillo is alleged to have contracted.
\* \* \*
5. Admit that there are serotypes of pneumococcal disease that are not contained within the Pneumovax 23 Vaccination available in 2007-2008.
\* \* \*
7. Admit that, as of 2007-2008, there were at least 90 serotypes of pneumococcal disease.

[Doc. 151-2 at 3-4]

for Admissions numbers 4, 6, 8, and 9, because "the evidence by Plaintiff's expert Dr. Martin, and Defendant Warden Wells does not support these facts." [Doc. 166 at 1] Request for Admissions numbers 4, 6, 8, and 9 provide as follows:

> 4. Admit that the Pneumovax 23 Vaccination, manufactured by Merck and available in 2007-2008, is a vaccine for pneumococcal disease caused by the 23 serotypes contained in the vaccine.
> \* \* \*
> 6. Admit that the Pneumovax 23 Vaccination is not effective against serotypes other than the 23 serotypes that are contained in the vaccine.
> \* \* \*
> 8. Admit that, as of 2007-2008, the Pneumovax 23 Vaccination did not vaccinate against all serotypes of pneumococcal disease.
> 9. Admit that vaccination with Pneumovax 23 vaccination does not guarantee protection against contracting pneumococcal disease caused by the 23 serotypes contained within the vaccination.

[Doc. 151-2 at 4-5]

## II. STANDARD

Fed. R. Civ. P. 36 governs requests for admissions and it provides, in relevant part, that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Pursuant to Fed. R. Civ. P. 36(b):

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

4

Fed. R. Civ. P. 36(b).

In determining whether to permit a withdrawal or an amendment, "[t]he court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than [] on the moving party's excuses for an erroneous admission." In re Durability, Inc., 212 F.3d 551, 556 (10th Cir. 2000) (internal quotation marks and citation omitted). The first factor in a Rule 36(b) analysis, presentation of the merits of the action, "emphasizes the importance of having the action resolved on the merits, and is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." Raiser v. Utah County, 409 F.3d 1243, 1246 (10th Cir. 2005) (internal quotation marks and citation omitted). Indeed, "[t]he principle that summary judgment should not deprive litigants of their right to a full hearing on genuine fact issues, together with the absence of prejudicial effect or evidence of sham, weigh heavily in favor of allowing" an amendment or withdrawal to requests for admissions. In re Durability, Inc., 212 F.3d at 557.

With respect to the second factor in a Rule 36(b) analysis, prejudice, it is well established that "[p]reparing a summary judgment motion in reliance upon an erroneous admission does not constitute prejudice." Id. at 556. Additionally, "[m]ere inconvenience does not constitute prejudice for this purpose." Raiser, 409 F.3d at 1246. Rather, "[t]he prejudice contemplated by Rule 36(b) . . . relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to questions previously deemed

5

admitted." Id. (internal quotation marks and citation omitted).

## III. DISCUSSION

Plaintiff argues that withdrawal of the facts deemed admitted in Request for Admissions numbers 4, 6, 8, and 9 would promote the presentation of the merits of the action because these admissions are disputed by the testimony of Plaintiff's expert witness, Dr. David Martin, Chief, Section of Infectious Diseases at Louisiana State University Medical School and Center. [See Doc. 135-1 at 1] In his expert report, Dr. Martin relies on studies demonstrating that vaccination against pneumococcal meningitis results in approximately a 60% reduction in pneumococcal diseases. [See Doc. 135-1 at 6] Dr. Martin states that "[i]n several case controlled studies the efficacy of the vaccine was shown to be 60% to 70%, about the same as shown in prospective field trials." [Id.] Additionally, "[i]n patients who do develop pneumonia despite prior vaccination the incidence of involvement of the blood stream is significantly decreased." [Id.] Thus, Dr. Martin opines that:

> These studies have clearly shown that in young healthy adults the vaccine prevents against bacteremic pneumococcal pneumonia (70%-80% effective) but also against presumptive pneumococcal pneumonia and against death in pneumonia overall. These data strongly support the role of vaccination in prevention of blood stream infection and, by inference, distant organ infection.

[Id.]

In his deposition, Dr. Martin testified that "the 23-valent pneumococcal vaccine is 60 to 70 percent efficacious to prevent invasive pneumococcal disease, or in other words,

bacteremic pneumococcal disease." [Doc. 135-2 at 2]  When asked whether "invasive pneumococcal disease" referred to "meningitis," Dr. Martin responded, "Yes."  [Doc. 135-2 at 3]  Dr. Martin further testified that:

> Well, we talked about serotyping of the organism and how there are a large number of serotypes and how relatively few of those serotypes cause serious disease.  We talked about the fact that the 23-valent vaccine covers specifically 80 percent–88 percent of the serotypes that cause serious disease and another 8 percent are related to those serotypes.  So the individuals have what we call cross-reactive protection against those.
> Therefore, you have about 96 percent coverage of the vaccine for the serotypes of the pneumococcal bacteria that cause serious invasive disease.  And then we related that to the efficaciousness.  We talked about the issue that no vaccines are 100 percent.  100 percent is probably best understood by the general population through the influenza vaccine where it's well-recognized that the vaccine is recommended to prevent serious events; but often people still get the infection.
> And the pneumococcal vaccine is pretty much similar to that.  So people still get the pneumonia caused by the pneumococcus but by virtue of having been vaccinated they have a very significant degree of protection against the more serious consequences of the vaccine.

[Id.]  Therefore, in Dr. Martin's opinion, to a reasonable degree of medical probability, if Mr. Jaramillo had been given the pneumovax vaccine, he would not have ended up with pneumococcal meningitis and "if he had developed pneumococcal meningitis, it would not have been as severe." [Doc. 166-2 at 2]

In response, Defendants rely on the patient information sheet for the Pneumovax 23 vaccine to argue that it is undisputed that Pneumovax 23: (1) is a vaccine for pneumococcal disease caused by the 23 serotypes contained in the vaccine; (2) is not effective against serotypes other than the 23 serotypes that are contained in the vaccine; (3) did not vaccinate against all serotypes of pneumococcal disease; and (4) does not

guarantee protection against contracting pneumococcal disease caused by the 23 serotypes contained within the vaccination. [Doc. 151 at 4-5]

Based on the foregoing, the Court concludes that conflicting evidence exists with respect to the efficacy of the Pneumovax 23 vaccine. Therefore, the presentation of the merits of the action would be served by permitting Plaintiff to withdraw the facts deemed to be admitted in Request for Admissions numbers 4, 6, 8 and 9.

The Court further concludes that Defendants will not be prejudiced by permitting Plaintiff to deny these requests for admissions. As previously explained, "[p]reparing a summary judgment motion in reliance upon an erroneous admission does not constitute prejudice." In re Durability, Inc., 212 F.3d at 556. Instead, "[t]he prejudice contemplated by Rule 36(b) . . .relates to the difficulty a party may face in proving its case . . . ." Raiser, 409 F.3d at 1246. There is no indication that Defendants will have difficulty proving their case regarding the efficacy of the Pneumovax 23 vaccine in the absence of Plaintiff's admissions. Indeed, both in response to Plaintiff's motion and in *Defendant's Motion for Summary Judgment* Defendants cite evidence in support of their argument regarding the efficacy of the Pneumovax 23 vaccine, including, but not limited to: (1) the patient information sheet for the Pneumovax 23 vaccine [Doc. 151-5]; and (2) the expert testimony of Dr. David L. Thomas, Professor and Chairman, Department of Surgery at the Division of Correctional Medicine at Nova Southeastern University [Doc. 129-2 at 31].

**IV.     CONCLUSION**

For the foregoing reasons, the Court concludes that it would promote the presentation of the merits of the action and that there would be no prejudice to Defendants if Plaintiff's motion is granted with respect to Request for Admissions numbers 4, 6, 8 and 9.

**IT IS THEREFORE HEREBY ORDERED** that *Plaintiff's Expedited Motion to Amend Request for Admissions or in the Alternative Allow Plaintiff to File a Late Response* [Doc. 135] is **GRANTED IN PART** with respect to Request for Admissions numbers 4, 6, 8 and 9 and **DENIED IN PART** with respect to Request for Admissions numbers 1, 2, 3, 5, and 7.

**SO ORDERED** this 19th day of September, 2013, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
Chief United States District Judge