IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

F. MICHAEL HART, Guardian ad
Litem for JOSE JARAMILLO, an
incapacitated person,

      Plaintiff,

vs.                                        No. 2:11-CV-00267-MCA-WPL

CORRECTIONS CORPORATION OF
AMERICA, a Foreign Corporation,
CIBOLA COUNTY
CORRECTIONAL CENTER, WALT
WELLS, WARDEN, and RODDIE
RUSHING, WARDEN,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Motion to Exclude Opinions of Brian McDonald* [Doc. 125]. At the pretrial conference held on September 3, 2013, the Court heard oral argument from the parties regarding Defendants' Motion. Having considered the submissions, the relevant case law, and otherwise being fully advised in the premises, the Court will grant in part and deny in party *Defendants' Motion to Exclude Opinions of Brian McDonald* [Doc. 125].

### I.    BACKGROUND

Plaintiff has filed a medical malpractice complaint against Defendants due to their alleged negligent failure to vaccinate Mr. Jaramillo against pneumococcal disease. In the present motion, Defendants move to exclude the proposed expert testimony of Brian

1

McDonald, Ph.D., regarding Mr. Jaramillo's hedonic damages. [Doc. 125]

Dr. McDonald is an economic consultant who received his Ph.D. in economics from the University of Pennsylvania in 1978. [Doc. 132-5 (Ex. 5)] He has been qualified as an expert witness in economics numerous times in state and federal courts. [Doc. 132-2 (Ex. 4)] In his original expert report dated April 12, 2012, he calculates "the present value of the life care plan, prepared by Harold Bialsky, D.C., M.A. C.R.C., C.L.C.P. on April 11, 2012, for Jose Jaramillo-Frias." [Doc. 132-4 (Ex. 4)] He also provides a framework for Mr. Jaramillo's value of life damages, also known as hedonic damages. While Dr. McDonald does not propose to offer "an opinion concerning the specific dollar amount of value of life damages for Jose Jaramillo-Frias, [he] will provide testimony as assistance to the trier of fact concerning the specialized knowledge of economists regarding the following issues:"

> 1. an economist's interpretation of the concept and meaning of hedonic damages.
>
> 2. identify broad areas of human experience which should be considered by the trier of fact in determining hedonic damages for a particular plaintiff. This would include how the plaintiff spent leisure time and participated in recreational activities, hobbies, and community activities.
>
> 3. a discussion of the well accepted, peer-reviewed economic research on the value of a statistical life, which places a reasonable range of the value of a statistical life in the United States at $5.0 million to $6.0 million in today's dollars, based upon [his] own review of the depth and breadth of the published economic research on the value of a statistical life.

[Doc. 132-4 at 2] His expert report also contains an extensive discussion of New Mexico case law regarding hedonic damages. [Id.]

Sometime after submitting his original report, Dr. McDonald drafted an addendum, entitled Exhibit 2, which "includes a projected cost for 'future hospitalizations' of Jaramillo of $100,000 every other year during his life, reduced to present value."[1]  [Doc. 125 at 8]  He based Exhibit 2 on Dr. Bialsky's life care plan, which includes a section regarding possible future hospitalizations "for informational purposes only."  [Doc. 134-2 at 29-30]  In his deposition, he explained the basis for Exhibit 2 as follows:

> . . . it really goes back to Dr. Bialsky's life care plan.  At the very end, he has a separate section dealing with – I think it's called "Potential Complications," which relate to future surgeries that Mr. Jaramillo may – may need in the future, but I guess there is some uncertainty about them, and I had not included any of that sort of potential complications costs in my present value of the life care plan, and so that was one issue we talked about.
>
> The other is Ms. Curtis talked to me about the fact that more recently, Mr. Jaramillo has had some actual hospitalizations, and that when he does go in the hospital, it's expensive.  It can be, as I recall, between, I don't know, $120,000 to $150,000, you know, for a hospitalization.
>
> So out of that conversation, she asked me, you know, how could we give the jury some idea of, you know, what the present value of these future, you know, surgery costs could be?  And so we settled on this hypothetical of just using $100,000 every other year, because it's not something he – you know, he is not hospitalized every year, but – and $100,000 would be sort of a round number that the jury could factor up or down, but that's the basis of it.

[Doc. 125-1 at 23-24]

Defendants contend that Dr. McDonald's testimony is unsound and unreliable because it invades the province of the jury by quantifying the value of a human life contrary to Smith v. Ingersoll-Rand Company, 214 F.3d 1235 (10th Cir. 2000).

---

[1] Exhibit 2 has not been provided to the Court, but it is described in the pleadings and in McDonald's deposition.

Furthermore, Defendants contend that Dr. McDonald's proposed testimony is more prejudicial than probative because it is based on "US [sic] economic data and American quality-of-life analogies," even though Mr. Jaramillo is not a United States citizen. Lastly, Defendants object to Exhibit 2 of the report regarding projected costs of future hospitalizations, claiming that this exhibit was not timely disclosed and lacks an adequate foundation. Plaintiff responds that the proposed expert testimony will assist the trier of fact in valuing Mr. Jaramillo's loss of enjoyment of life, which is a proper measure of damages under New Mexico law.

## II.   STANDARDS

Rule 702 imposes a special gatekeeping obligation on the Court to ensure that expert testimony is not admitted at trial unless it is both relevant and reliable. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). The relevance of such testimony also must be weighed against the danger of unfair prejudice, confusion of the issues, or misleading the jury as well as considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. While the Court is not required to consider any particular set of factors or utilize a particular procedure in making such determinations with respect to expert testimony, the Court must make *some* kind of determination on the record in order to demonstrate that it has performed its gatekeeping function. See United States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000); Goebel v. Denver and Rio Grande Western R. Co., 346 F.3d 987, 991-92 (10th Cir. 2003).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The first requirement of this rule is that the expert's specialized knowledge must assist the trier of fact. Id. Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject. United States v. Muldrow, 19 F.3d 1332, 1338 (10th Cir. 1994).

Rule 702 requires that expert opinions, to be admissible in federal court, must have not only a reliable methodology but also a sufficient factual basis and a reliable application of the methodology to the facts. See Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 429 (6th Cir. 2007); United States v. Mamah, 332 F.3d 475, 477-78 (7th Cir. 2003). A sufficient factual basis under Fed. R. Evid. 702 does not necessarily require the facts or data upon which an expert bases his or her opinion to be independently admissible, so long as they are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. Fed. R. Evid. 703.

The Federal Rules of Evidence require that, in order to yield an admissible opinion, expert witnesses must first apply a reliable methodology to the facts or data they have considered. Factors to be considered in assessing the reliability of an expert opinion include, but are not limited to: (1) whether the opinion has been subjected to testing or is susceptible of such testing; (2) whether the opinion has been subjected to publication and peer review; (3) whether the methodology used has standards controlling its use and known rate of error; (4) whether the theory has been accepted in the scientific community. Truck Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1210 (10th Cir. 2004) (citing Daubert, 509 U.S. at 590).

## III. DISCUSSION

In Smith v. Ingersoll-Rand Company, 214 F.3d 1235 (10th Cir. 2000), our Tenth Circuit Court of Appeals addressed the admissibility of expert testimony on hedonic damages. In that case, the plaintiff was injured by a piece of construction equipment, resulting in the surgical amputation of his right leg above the knee. Id. at 1240. The plaintiff offered the expert testimony of a forensic economist to assist the jury in calculating plaintiff's "hedonic" damages or "loss of enjoyment of life" damages. Id. at 1244. The district court found the expert witness's "valuations of a statistical human life to be unreliable and concluded any attempt to quantify [the plaintiff's] hedonic damages would be 'both unhelpful and confusing to the jury.'" Id. The district court did, however, permit the expert witness to testify about the meaning of hedonic damages, reasoning that an explanation of "'hedonic damages and how they differ from other damages, particularly pain and suffering' would ensure that hedonic damages were given the

6

'consideration they deserve as part of the substantive law of New Mexico' and would help the jury 'place a value on a loss that is difficult to quantify.'" Id. at 1244.

The Tenth Circuit affirmed the judgment of the district court, explaining that "[t]he concept of hedonic damages is premised on what we take to be the rather noncontroversial assumption that the value of an individual's life exceeds the sum of that individual's economic productivity. In other words, one's life is worth more than what one is compensated for one's work." Id. "The theory of hedonic damages becomes highly controversial when one attempts to monetize that portion of the value of life which is not captured by economic productivity." Id. at 1245. The Court did not need to address the admissibility of expert testimony quantifying hedonic damages, but the Court noted that:

> Attempts to quantify the value of human life have met considerable criticism in the literature of economics as well as in the federal court system. Troubled by the disparity of results reached in published value-of-life studies and skeptical of their underlying methodology, the federal courts which have considered expert testimony on hedonic damages in the wake of *Daubert* have unanimously held quantifications of such damages inadmissible.

Id. However, the Court held that expert testimony regarding the general concept of hedonic damages was admissible under Daubert. The Court explained that "New Mexico state law permits both the recovery of hedonic damages and allows 'an economist to testify regarding his or her opinion concerning the economic value of a plaintiff's loss of enjoyment of life.'" Id. at 1245-46 (quoting Sena v. New Mexico State Police, 892 P.2d 604, 611 (N.M. App. 1995), cert denied 890 P.2d 1321 (1995)). The Court held that the district court had "made an appropriate decision regarding reliability, excluding the

7

quantification which has troubled both courts and academics, but allowing an explanation adequate to insure the jury did not ignore a component of damages allowable under state law." Id. at 1246.

Consistent with Smith, federal courts routinely admit expert testimony on hedonic damages generally, but exclude any attempts to quantify hedonic damages. Indeed, in BNSF Railway Company v. LaFarge Southwest, Inc., 06-CIV-1076 MCA/LFG, 2009 WL 4279849 (D.N.M. Feb. 9, 2009), this Court held that McDonald could testify as to hedonic damages generally, but excluded any attempt to quantify the plaintiff's hedonic damages, explaining as follows:

> Based on this authority, each of the parties' experts will be permitted to offer such generalized testimony about the *concept* of hedonic damages, and their motions in limine are denied in part insofar as they seek to exclude opinion testimony on this aspect of hedonic damages.
>
> The majority rule in federal courts, however, is that expert testimony which places a *dollar figure* before the jury in an attempt to *quantify* the value of a human life is inadmissible and does not meet the relevance and reliability factors set forth *Daubert* and its progeny. *See Smith*, 214 F.3d at 1244-45; *Raigosa v. Roadtex Transp. Corp.*, No. 04cv305 RLP/WDS, Doc. 60 at 4-5 (D.N.M. Feb. 10, 2005) (unpublished memorandum opinion and order collecting cases). I construe this rule as applying to any opinion testimony which attempts to quantify (or place a monetary value on) a particular decedent's hedonic damages, *as well as* any opinion testimony which places before the jury a dollar figure or numeric formula as a so-called "benchmark figure," "guideline," or "range of values" to be used in calculating such damages. In my view, the latter approach to opining about a dollar-figure or numeric formula is just a "Trojan horse" aimed at getting the same type of inadmissible information before the jury under a different label. The fact remains that the underlying methodology used to arrive at such quantitative measurements of the value of human life does not meet the relevance and reliability requirements of *Daubert* and its progeny and will not assist the jury, regardless of whether the figure, formula, or "range of values" in question is assigned to a specific decedent, a hypothetical individual, a statistical person, or a generic benchmark or guideline.

8

> Accordingly, the parties' motions in limine are granted in part insofar as they seek to exclude opinion testimony from any expert that places a quantitative measurement of hedonic damages (or the value of human life) before the jury under these labels.
>
> On a more general level, expert witnesses also may not usurp the jury's fact finding role in determining whether other witnesses testified credibly as to a decedent's enjoyment of life, *see United States v. Adams*, 271 F.3d 1236, 1245-46 (10th Cir. 2001), nor may such witnesses usurp the Court's role in instructing the jury on what the law is by providing them with a lengthy summary of the reported case law on hedonic damages, *see Specht v. Jensen*, 853 F.2d 805, 807-09 (10th Cir. 1988). Such references to reported case law will not be admitted before the jury *at trial.*

Id. at *2 (emphasis in original).

The Court hereby adopts and applies the analysis in BNSF Railway Company. Defendants' Motion will be granted to the extent that Dr. McDonald proposes to quantify hedonic damages by providing the jury with "a reasonable range of the value of a statistical life in the United States at $5.0 million to $6.0 million in today's dollars." [Doc. 132-4 at 2]  Furthermore, the Motion will be granted to the extent that he proposes to provide the jury with "a lengthy summary of reported case law on hedonic damages." BNSF Railway Company, 2009 WL 4279849, at *2.  However, the Motion will be denied with respect to the proposed expert testimony regarding the general concept of hedonic damages.

Nonetheless, Defendants contend that the probative value of Dr. McDonald's proposed expert testimony is outweighed by its prejudicial effect because Mr. Jaramillo is not a United States citizen and "McDonald's opinions attempt to apply US economic data and American quality-of-life analogies to him in feigned ignorance of his status as a Mexican national." [Doc. 125 at 7]  In support of their argument, Defendants rely on

9

Cruz v. Bridgestone/Firestone, North America Tire, Inc., 06-CIV-538 BB/DJS, 2008 WL 5598439 (D.N.M. Aug. 29, 2008).  In Cruz, the Court excluded Dr. McDonald's proposed expert testimony on hedonic damages for Mexican citizens who were killed and/or injured in a car accident.  That Court reasoned that McDonald's range of values regarding risk premiums was "based exclusively on wage scale and consumer choices in the United States," but "[s]everal of the Plaintiffs had spent the majority of their working career employed in Mexico and were only sporadically in the United States," while others were so young that they "had never been employed in this country." Id. at *5.  Because McDonald had not "made any attempt to acknowledge the Mexican citizenship of the Plaintiffs or the legal barriers to their earning the average American wages," the Court excluded his proposed expert testimony under Daubert and Rule 403. Id. at *6.

 The Court is not persuaded by the analysis in Cruz.  Hedonic damages, by their very nature, do not compensate the victim for lost wages or lost economic productivity. Instead, they compensate the victim for the intangible non-economic value of human life. See Smith, 214 F.3d at 1244.  This Court concludes that the intangible non-economic value of human life is the same for every person, regardless of race, ethnicity, religion, or citizenship.  The Court recognizes that, in the present case, Mr. Jaramillo was not just a non-citizen, but an illegal alien subject to an order of deportation and that this fact is relevant to the jury's consideration of hedonic damages. Cf. Baron v. Sayre Memorial Hosp., Inc., No. 99-6288, 2000 WL 1014982 (10th Cir. July 24, 2000) (holding that a plaintiff's criminal record is relevant to hedonic damages).  Although Dr. McDonald did not consider Mr. Jaramillo's illegal status and the pending order of deportation in

10

calculating the range of values for a statistical value of a human life, the Court nonetheless concludes that his expert testimony is reliable and admissible because he will not be permitted to testify as to a range of values of a statistical life; rather, his testimony will be strictly limited to the concept of hedonic damages generally.

Turning to Exhibit 2, the Court notes that McDonald's proposed testimony regarding the present value of Mr. Jaramillo's future hospitalizations is based on Dr. Bialsky's life care plan, which includes a section on possible future hospitalizations "for informational purposes only." [Doc. 134-2 at 29-30] Dr. Bialsky himself does not intend to testify about Mr. Jaramillo's future hospitalizations, since the frequency of such occurrences necessitates a medical opinion and is beyond the scope of his expertise as a life care planner. [Doc. 127-1 at 21] Regardless, Dr. McDonald does not use the values cited in Dr. Bialsky's report, but instead extrapolates a "round" "hypothetical" figure of $100,000 every other year that the jury could factor up or down. [Doc. 125-1 at 23-24] This "round" "hypothetical" figure lacks an adequate foundation, since there is no expert medical testimony proffered to support the conclusion that Mr. Jaramillo will incur $100,000 of future hospitalization costs every other year. Accordingly, Defendants' Daubert motion to exclude Exhibit 2 will be granted.

## IV.    CONCLUSION

For the foregoing reasons, *Defendants' Motion to Exclude Opinions of Brian McDonald* [Doc. 125] will be granted in part and denied in part. Specifically, the motion will be granted with respect to Dr. McDonald's proposed testimony quantifying hedonic damages, explaining New Mexico case law, and providing a present value for Mr.

11

Jaramillo's future hospitalizations. However, the motion will be denied with respect to his proposed testimony on the general concept of hedonic damages.

**IT IS THEREFORE HEREBY ORDERED** that *Defendants' Motion to Exclude Opinions of Brian McDonald* [Doc. 125] is **GRANTED IN PART AND DENIED IN PART.**

**SO ORDERED** this 6th day of May, 2014 in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
Chief United States District Judge