IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**F. MICHAEL HART, ESQ.,** Guardian ad Litem
For **JOSE JARAMILLO,** an incapacitated person,

    Plaintiff,

    vs.          No. 2:11-CV-00267 MCA/WPL

**CORRECTIONS CORPORATION OF AMERICA,**
a foreign corporation, **CIBOLA COUNTRY
CORRECTIONAL CENTER, WALT WELLS,
WARDEN,** and **RODDIE RUSHING, WARDEN**,

    Defendants.

## ORDER

**THIS MATTER** comes before the Court on *Plaintiff's Daubert Motion to Exclude Expert Testimony of Lowell Young, M.D.* [Doc. 124], filed May 15, 2013. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies Plaintiff's Motion.

**I.    BACKGROUND**

Mr. Jaramillo was an agricultural laborer in Hatch, New Mexico, when he was arrested for the crime of Reentry of Removed Alien in violation of 8 U.S.C. § 1326(a)(1)(2) and 8 U.S.C. § 1326(b)(2). See United States v. Jaramillo-Frias, 2:06-CR-02304-JAP, Doc. 15 (D.N.M. February 6, 2007). Mr. Jaramillo pled guilty and was sentenced to thirty-three months of incarceration. Id. He served his sentence at the

1

Cibola County Correction Center (CCCC), which is operated by the Corrections Corporation of America (CCA).

On June 20, 2007, June Kershner, a certified nurse practitioner at CCCC, performed an intake physical examination on Mr. Jaramillo. During the physical examination, nurse Kershner diagnosed Mr. Jaramillo with the new onset of Type 2 diabetes. [Doc. 129-2 (Ex. H); Doc. 138 (Ex. 3)]

Despite having been diagnosed with diabetes, Mr. Jaramillo was not offered and did not receive the Pneumovax 23 vaccine, which protects against pneumococcal disease. [Doc. 126 at 1] At the time Mr. Jaramillo was diagnosed with diabetes, the Federal Bureau of Prisons (BOP) Clinical Practice Guidelines recommended that the pneumococcal vaccine be administered to all inmates with diabetes mellitus. [Doc. 129-1 (Ex. G)] Defendant CCA, however, did not require that the pneumococcal vaccine be administered to diabetic inmates. [Doc. 129-2 (Ex. H) at 8, 12]

On May 22, 2008, Mr. Jaramillo was again seen by nurse Kershner. Observing that he had "flu like symptoms" and a "sudden change in mental status," nurse Kershner summoned an ambulance to transport Mr. Jaramillo to Cibola General Hospital. [Doc. 141 (Ex. 6)] He was subsequently transferred to Lovelace Women's Hospital in Albuquerque, New Mexico, where he was diagnosed with sepsis from pneumococcal meningitis. [Doc. 137 at 6; Doc. 141 (Ex. 17)] Thereafter, Mr. Jaramillo was transferred to the Federal Medical Center in Rochester, Minnesota, where he was diagnosed with "cognitive impairment secondary to pneumococcal meningoencephalitis." [Doc. 141-1 at

3 (Ex. 18)]   In December of 2010, Mr. Jaramillo was released to a nursing home in Las Cruces, New Mexico, where he remains today.

On February 15, 2011, Mr. Jaramillo's Guardian ad Litem (Plaintiff) filed a Complaint to Recover Damages for Personal Injuries Arising from Medical Malpractice against CCCC, CCA, Warden Walt Wells and Warden Roddie Rushing (Defendants) in the Second Judicial District of the State of New Mexico.   [Doc. 1-1]   Defendants removed the case to this Court on the basis of diversity jurisdiction.

Defendants have offered Dr. Young as an infectious disease expert who will provide causation testimony regarding the "alleged efficacy of the Pneumovax 23 vaccine." [Doc. 146] Plaintiff filed the present Motion, *Plaintiff's Daubert Motion to Exclude Expert Testimony of Lowell Young, M.D.* [Doc. 124], seeking to exclude Dr. Young from providing such testimony.

## II.   STANDARD

Federal Rule of Evidence 702 imposes a special gatekeeping obligation on this Court to ensure that expert testimony is not admitted at trial unless it is both relevant and reliable.   See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). The relevance of such testimony must be weighed against the danger of unfair prejudice, confusion of the issues, or misleading the jury as well as considerations of undue delay, waste of time, or needless presentation of cumulative evidence.   See Fed. R. Evid. 403.   While the Court is not required to consider any particular set of factors or utilize a particular procedure in making

3

such determinations with respect to expert testimony, the Court must make some kind of determination on the record in order to demonstrate that it has performed its gatekeeping function.  See United States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000); Goebel v. Denver and Rio Grande Western R. Co., 346 F.3d 987, 991-92 (10th Cir. 2003).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

 Id. The first requirement of this rule is that the expert's specialized knowledge must "help the trier of fact understand the evidence" or "determine a fact in issue."  Id.   "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject."  United States v. Muldrow, 19 F.3d 1332, 1338 (10th Cir. 1994).

Rule 702 requires that expert opinions, to be admissible in federal court, must have not only a reliable methodology but also a sufficient factual basis and a reliable application of the methodology to the facts.  See Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 429 (6th Cir. 2007); United States v. Mamah, 332 F.3d 475, 477-78 (7th Cir. 2003).

4

A "sufficient factual basis" under Fed. R. Evid. 702 does not necessarily require the facts or data upon which an expert bases his or her opinion to be independently admissible, so long as they are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.   Fed. R. Evid. 703.

The Federal Rules of Evidence require that, in order to yield an admissible opinion, expert witnesses must first apply a reliable methodology to the facts or data they have considered.   Factors to be considered in assessing the reliability of an expert opinion include, but are not limited to: "(1) whether the opinion has been subjected to testing or is susceptible of such testing; (2) whether the opinion has been subjected to publication and peer review; (3) whether the methodology used has standards controlling its use and known rate of error; (4) whether the theory has been accepted in the scientific community." Truck Ins. Exch. v. MagneTek, Inc., 360 F.3d 1206, 1210 (10th Cir. 2004) (citing Daubert, 509 U.S. at 590).   This list is neither exhaustive nor applicable in every case, as ultimately the purpose of the reliability requirement is to "make certain an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the field." Kumho Tire Co., 526 U.S. at 152.

Even where a witness is qualified as an expert and has both a sufficient factual basis and a reliable methodology, the Court's inquiry is not yet at an end.   The Court also must determine whether or to what extent the witness reliably applied that methodology to the facts at issue in the present case and whether or to what extent the resulting opinions will

assist the trier of fact.  Our Circuit has interpreted Rule 702 as requiring "a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject."  Muldrow, 19 F.3d at 1338.  So long as these criteria are satisfied, an expert may testify and provide "brief, crisp answers to the . . . questions" about these "discrete topics" which are "beyond the ken of the average juror."  United States v. Tapia-Ortiz, 23 F.3d 738, 740-41 (2d Cir. 1994).

### III. DISCUSSION

Dr. Young is being offered by the Defendants as a causation expert to address the alleged efficacy of the Pneumovax 23 vaccine. [Doc. 146 at 4] Plaintiff contends that Dr. Young is unqualified to provide an opinion on pneumococcal disease because he is currently conducting research that is unrelated to pneumococcal meningitis and has not been practicing medicine since 2000. [Doc. 124 at 2] Plaintiff further contends that Dr. Young should be excluded because his testimony is based on outdated studies and will only serve to confuse and mislead the jury. [Id.]

Defendants contend that Dr. Young, as an infectious disease specialist that is proposing to offer opinions regarding the efficacy of a vaccine that is designed to combat an infectious disease, possesses the knowledge, training, and specialization in the relevant field to qualify him as an expert under Rule 702. [Doc. 146 at 4] Defendants further contend that Plaintiff's assertion that Dr. Young's testimony will mislead the jury is a "smoke and mirrors" argument. [Doc. 146 at 5]

Dr. Young is the Director of the Kuzell Institute for Arthritis & Infectious Diseases

of the California Pacific Medical Center Research Institute in San Francisco. [Doc. 146 at 2] He serves on the editorial board of the following publications: *Clinical Infectious Diseases, Antimicrobial Agents and Chemotherapy, Diagnostic Microbiology and Infectious Diseases, Infectious Diseases in Clinical Practice,* and *Infection and Immunity*. [Doc. 146-2 at 7] Dr. Young previously served as a Professor of Medicine in the Division of Infectious Diseases at the University of California, Los Angeles. [Doc. 146 at 2] Dr. Young has written papers on pneumococcal disease, has instructed students regarding the treatment of patients with pneumococcal meningitis, and has treated patients suffering from both diabetes and pneumococcal meningitis. [Daubert Hearing Transcript 11-22-13, 112:10-114:5; 122:7-122:20]

In his expert report, Dr. Young provides the following medical opinion: "It is my professional opinion that pneumococcal immunization in this patient, had it been available and utilized, would not have obviated the development of pneumococcal meningitis, and subsequently averted the current severe debilitated state of the patient." [Doc. 146-2 at 4] In forming his opinion, Dr. Young examined the clinical evidence on the efficacy of the vaccine, which is based on controlled trials of preventing pneumococcal disease, in particular pneumococcal pneumonia and bacteremia. [Doc. 146-2 at 4] He noted that "despite the bulk of evidence showing efficacy in minimizing pneumococcal disease in adults, it is clear that a consistent benefit in certain groups of adults has not been manifest." [Doc. 146-2 at 4] In reaching his conclusions, he relied on a "prospective, blinded study of 2,354 adult patients in the Veterans Administration system, which showed no difference in

7

pneumococcal pneumonia or bronchitis between vaccinated and controlled subjects."[Doc. 146-2 at 4] Dr. Young further noted the absence of any "randomized, prospective study in diabetics specifically showing a reduction in the incidence of pneumococcal meningitis." [Id.]

Dr. Young is being offered as rebuttal witness in response to Plaintiff's causation expert, Dr. Martin, and will offer testimony that the clinical evidence on which Dr. Martin relies does not support the assertion that you can protect a diabetic from pneumococcal meningitis. [Doc. 146 at 5-6]   Dr. Young has specifically opined that "there's no real data showing that you can protect a diabetic from pneumococcal meningitis. . ..There's no randomized double blind, prospective, human clinical trial in which half the patients were diabetic are given the Pneumovax, and the other half a placebo or a control or nothing and a difference is shown in the incidence of pneumococcal meningitis." [Doc. 146-1 at 5] Further, Dr. Young opined that "[t]he major cause of pneumococcal disease in adults is pneumonia," and that "if [the vaccine] doesn't protect against pneumonia, then how can you argue that it protects against invasive disease and meningitis?" [Doc. 146-1 at 8).

Dr. Young's opinion that even if the pneumococcal vaccine been available and utilized in this patient, it would not have obviated the development of pneumococcal meningitis, and subsequently averted the current severe debilitated state of the patient, is based in part on, what Dr. Young believes to be, the lack of data supporting Plaintiff's assertion that the vaccine can protect a diabetic from pneumococcal meningitis. [Doc. 146-2 at 4-6] Such testimony will help the jury in understanding the evidence and in

determining whether the pneumococcal meningitis vaccine would have obviated the development of Mr. Jaramillo's pneumococcal meningitis, and subsequently averted his current debilitated state. [Doc. 146-2 at 4] Thus, Dr. Young's testimony will "help the trier of fact understand the evidence" and "determine a fact in issue." Fed. R. Evid. 702.

Moreover, Dr. Young has sufficient "knowledge, skill, experience, training, [and] education" in his field to allow him to testify regarding causation. Fed. R. Evid. 702. As noted above, Dr. Young is an infectious disease specialist who has written papers on pneumococcal disease, has instructed students regarding the treatment of patients with pneumococcal meningitis, and has treated patients suffering from both diabetes and pneumococcal meningitis. [Daubert Hearing Transcript 11-22-13, 112:10-114:5; 122:7-122:20] Therefore, based on Dr. Young's experience and expertise with pneumococcal meningitis, the Court concludes that he is qualified to testify regarding causation. Fed. R. Evid. 702.

## IV. CONCLUSION

For the reasons outlined above, the Court finds that with proper foundation, Dr. Young is qualified to provide expert testimony regarding causation. The Court's rulings on all issues addressed above are subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial.

**IT IS, THEREFORE, ORDERED** that *Plaintiff's Daubert Motion to Exclude Expert Testimony of Lowell Young, M.D.* [Doc. 124] is **DENIED**.

**SO ORDERED** this 6th day of May, 2014, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
Chief United States District Judge