**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**F. MICHAEL HART, ESQ.,** Guardian ad Litem
For **JOSE JARAMILLO,** an incapacitated person,

      Plaintiff,

      vs.                             No. 2:11-CV-00267 MCA/WPL

**CORRECTIONS CORPORATION OF AMERICA,**
a foreign corporation, **CIBOLA COUNTRY
CORRECTIONAL CENTER, WALT WELLS,
WARDEN,** and **RODDIE RUSHING, WARDEN**,

      Defendants.

## ORDER

**THIS MATTER** comes before the Court on *Plaintiff's Daubert Motion to Exclude Expert Testimony of Naushira Pandya, M.D., CMD* [Doc. 126].   Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants Plaintiff's Motion.

**I.**      **BACKGROUND**

Mr. Jaramillo was an agricultural laborer in Hatch, New Mexico, when he was arrested for the crime of Reentry of Removed Alien in violation of 8 U.S.C. § 1326(a)(1)(2) and 8 U.S.C. § 1326(b)(2).   See United States v. Jaramillo-Frias, 2:06-CR-02304-JAP, Doc. 15 (D.N.M. February 6, 2007).   Mr. Jaramillo pled guilty and was sentenced to thirty-three months of incarceration.   Id.   He served his sentence at the Cibola County Correction Center (CCCC), which is operated by the Corrections

1

Corporation of America (CCA).

On June 20, 2007, June Kershner, a certified nurse practitioner at CCCC, performed an intake physical examination on Mr. Jaramillo.  During the physical examination, nurse Kershner diagnosed Mr. Jaramillo with the new onset of Type 2 diabetes.  [Doc. 129-2 (Ex. H); Doc. 138 (Ex. 3)]

Despite having been diagnosed with diabetes, Mr. Jaramillo was not offered and did not receive the Pneumovax 23 vaccine, which protects against pneumococcal disease. [Doc. 126 at 1] At the time Mr. Jaramillo was diagnosed with diabetes, the Federal Bureau of Prisons (BOP) Clinical Practice Guidelines recommended that the pneumococcal vaccine be administered to all inmates with diabetes mellitus.  [Doc. 129-1 Ex. G] Defendant CCA, however, did not require that the pneumococcal vaccine be administered to diabetic inmates.  [Doc. 129-2 (Ex. H) at 8, 12]

On May 22, 2008, Mr. Jaramillo was again seen by nurse Kershner.  Observing that he had "flu like symptoms" and a "sudden change in mental status," nurse Kershner summoned an ambulance to transport Mr. Jaramillo to Cibola General Hospital.  [Doc. 141 (Ex. 6)]  He was subsequently transferred to Lovelace Women's Hospital in Albuquerque, New Mexico, where he was diagnosed with sepsis from pneumococcal meningitis.  [Doc. 137 at 6; Doc. 141 (Ex. 17)]  Thereafter, Mr. Jaramillo was transferred to the Federal Medical Center in Rochester, Minnesota, where he was diagnosed with "cognitive impairment secondary to pneumococcal meingoencephalitis."  [Doc. 141-1 at 3 (Ex. 18)]  In December of 2010, Mr. Jaramillo was released to a nursing home in Las

Cruces, New Mexico, where he remains today.

On February 15, 2011, Mr. Jaramillo's Guardian ad Litem (Plaintiff) filed a Complaint to Recover Damages for Personal Injuries Arising from Medical Malpractice against CCCC, CCA, Warden Walt Wells and Warden Roddie Rushing (Defendants) in the Second Judicial District of the State of New Mexico. [Doc. 1-1] Defendants removed the case to this Court on the basis of diversity jurisdiction.

On May 15, 2013, Plaintiff filed the present Motion, *Plaintiff's Daubert Motion to Exclude Expert Testimony of Naushira Pandya, M.D., CMD* [Doc. 126], seeking to exclude Dr. Pandya from testifying regarding Mr. Jaramillo's life-expectancy. On November 22, 2013, the Court held a Daubert hearing at which time Plaintiff's counsel expanded the original objection from a request to strike Dr. Pandya's life expectancy opinion to a request to strike Dr. Pandya in her entirety. Specifically, Plaintiff's counsel objected to Dr. Pandya's opinion regarding the diabetic care Mr. Jaramillo received, asserting that such testimony should not be permitted because diabetic care is not at issue. [Daubert Hearing Transcript 11-22-13 15:3-15:7][1]

## II.   STANDARD

Federal Rule of Evidence 702 imposes a special gatekeeping obligation on this Court to ensure that expert testimony is not admitted at trial unless it is both relevant and reliable. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). The relevance of such

---

1 The citations to the Daubert Hearing Transcript correspond to the Draft Transcript. The official transcript has been filed on the docket as Document 267.

testimony must be weighed against the danger of unfair prejudice, confusion of the issues, or misleading the jury as well as considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  See Fed. R. Evid. 403.   While the Court is not required to consider any particular set of factors or utilize a particular procedure in making such determinations with respect to expert testimony, the Court must make *some* kind of determination on the record in order to demonstrate that it has performed its gatekeeping function.  See United States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000); Goebel v. Denver and Rio Grande Western R. Co., 346 F.3d 987, 991-92 (10th Cir. 2003).

> Rule 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Id. The first requirement of this rule is that the expert's specialized knowledge must "help the trier of fact understand the evidence" or "determine a fact in issue."  Id.   "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject."  United States v. Muldrow, 19 F.3d 1332, 1338 (10th Cir. 1994).

Rule 702 requires that expert opinions, to be admissible in federal court, must have not only a reliable methodology but also a sufficient factual basis and a reliable application of the methodology to the facts.   See Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 429 (6th Cir. 2007); United States v. Mamah, 332 F.3d 475, 477-78 (7th Cir. 2003). A "sufficient factual basis" under Fed. R. Evid. 702 does not necessarily require the facts or data upon which an expert bases his or her opinion to be independently admissible, so long as they are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.   Fed. R. Evid. 703.

The Federal Rules of Evidence require that, in order to yield an admissible opinion, expert witnesses must first apply a reliable methodology to the facts or data they have considered.   Factors to be considered in assessing the reliability of an expert opinion include, but are not limited to: "(1) whether the opinion has been subjected to testing or is susceptible of such testing; (2) whether the opinion has been subjected to publication and peer review; (3) whether the methodology used has standards controlling its use and known rate of error; (4) whether the theory has been accepted in the scientific community." Truck Ins. Exch. v. MagneTek, Inc., 360 F.3d 1206, 1210 (10th Cir. 2004) (citing Daubert, 509 U.S. at 590).   This list is neither exhaustive nor applicable in every case, as ultimately the purpose of the reliability requirement is to "make certain an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the field." Kumho Tire Co., 526 U.S. at 152.

Even where a witness is qualified as an expert and has both a sufficient factual basis and a reliable methodology, the Court's inquiry is not yet at an end. The Court also must determine whether or to what extent the witness reliably applied that methodology to the facts at issue in the present case and whether or to what extent the resulting opinions will assist the trier of fact. Our Circuit has interpreted Rule 702 as requiring "a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." Muldrow, 19 F.3d at 1338. So long as these criteria are satisfied, an expert may testify and provide "brief, crisp answers to the . . . questions" about these "discrete topics" which are "beyond the ken of the average juror." United States v. Tapia-Ortiz, 23 F.3d 738, 740-41 (2d Cir. 1994).

## III. DISCUSSION

Dr. Naushira Pandya is currently the Professor and Chair of the Department of Geriatrics at Nova Southeastern University College of Osteopathic Medicine in Ft. Lauderdale, Florida. [Doc. 147-1] She completed a fellowship in geriatrics and endocrinology and metabolism at the University of Michigan Medical Center, and has worked as an internist and geriatrician at Lovelace Health Systems in Albuquerque, New Mexico. [Doc. 147-1] She is board certified in internal medicine, geriatrics, and endocrinology and metabolism. [Doc. 147-1]

Presently, Dr. Pandya spends fifty-percent of her time teaching, and fifty-percent of her time providing direct care to patients of various ages who reside in a long-term care or nursing home setting. [Daubert Hearing Transcript 11-22-13, 17:9-17:24]

6

According to Defendants' Rule 26 disclosures and Dr. Pandya's expert report, Defendants seek to offer Dr. Pandya as an expert in diabetic care as well as a rebuttal expert regarding the life expectancy of Mr. Jaramillo. [Daubert Hearing Transcript 11-22-13, 14:16-16:11] Plaintiff wishes to exclude Dr. Pandya in her entirety.[2] [Daubert Hearing Transcript 11-22-13, 14:16-16:11]

### A. Life Expectancy

Dr. Pandya's expert report states that she does "not believe [Mr. Jaramillo] can be expected to [live to] be 81 years as predicted by the actuarial tables." [Doc. 126-1 at 4] Dr. Pandya further opined that diabetes alone can reduce a person's life expectancy by ten years, and that based on Mr. Jaramillo's co-morbidities it is extremely unlikely that Mr. Jaramillo will live to be 81 years old. [Doc. 126-1 at 4]

Plaintiff moves to exclude Dr. Pandya on the grounds that Dr. Pandya is not qualified to provide an expert opinion on the length or quality of Mr. Jaramillo's life. [Doc. 162 at 6]. Specifically, Plaintiff asserts that Defendants have failed to demonstrate that Dr. Pandya's technique for determining life expectancy is generally accepted in the relevant scientific community, and is based on anything other than speculation or conjecture. [Doc. 126 at 4]

Defendants respond that Dr. Pandya should be permitted to testify regarding Mr. Jaramillo's diminished life expectancy because her opinion is well supported by Mr.

---

2 Plaintiff's Motion specifically seeks to exclude Dr. Pandya's testimony regarding the life expectancy of Mr. Jaramillo. [Doc. 126] However, at the November 22, 2013, Daubert hearing Plaintiff's counsel indicated that she was in fact seeking to exclude Dr. Pandya's testimony in its entirety.

Jaramillo's chronic conditions, such as his diabetes. [Doc. 147 at 1]   Defendants assert that Dr. Pandya is qualified to provide an opinion regarding Mr. Jaramillo's diminished life expectancy based on her experience and training, as well as her personal observations of patients with diabetes. [Daubert Hearing Transcript 11-22-13, 55:4-55:17]   Defendants, therefore, assert that Dr. Pandya's experience and training allowed her to reach her conclusion that diabetes alone can reduce life expectancy by almost ten years. [Daubert Hearing Transcript 11-22-13, 55:4-55:17; 69:8-69:14]

    Because Daubert requires that expert testimony be based on reliable principles and methods, the Court, as gatekeeper, must determine that the witness has not only relied on reliable principles and methods in forming his or her opinion, but that the witness has applied such principles and methods reliably to the specific facts of the case at hand. See Mamah, 332 F.3d at 477-78. Ultimately, such testimony must assist the trier of fact.

    At the November 22, 2013, Daubert hearing, Dr. Pandya was questioned regarding the principles and methods that she employed in forming her life-expectancy opinion. Specifically, Plaintiff's counsel inquired as to whether some of the sources referenced in Dr. Pandya's expert report addressed the issue of decreased life expectancy of diabetics, to which Dr. Pandya responded that they did not. [Daubert Hearing Transcript 31:7-31:12; 44:17-44:22] When questioned regarding whether she knew "what the national life expectancy tables [were]," Dr. Pandya answered that she did "not know them extremely well," but that she has "looked specifically into . . . the literature that looks at life expectancy in people with diabetes, but not the national life expectancy tables," but had not

referenced any such literature in her report. [Daubert Hearing Transcript 53:9-53:21] Dr. Pandya further noted that "in the past [she had looked] at life expectancy in people with diabetes, and [that] from the National Health and Nutrition Survey, it's clear that [the life expectancy] for people with diabetes is about eight years shorter, eight to ten, than people without diabetes." [Daubert Hearing Transcript 53:9-53:20] When asked about her familiarity with how "life expectancy is arrived at by the actuarials that compute life expectancy for the national life expectancy tables," Dr. Pandya responded that she did not have that expertise.   [Daubert Hearing Transcript 54:8-54:14]   Defense counsel, however, made it clear that that Dr. Pandya's life expectancy opinion was based on her experience and training, and that her experience and training is what "led her to the conclusion that diabetes alone can reduce life expectancy by almost ten years." [Daubert Hearing Transcript 11-22-13, 69:8-69:14]

In light of the parties' briefing, and the testimony provided at the Daubert hearing, the Court concludes that Defendants have failed to establish that Dr. Pandya's opinion regarding Mr. Jaramillo's life expectancy is based on reliable principles and methods and is anything more than conjecture.   Therefore, the Court concludes that Dr. Pandya will not be permitted to testify as to Mr. Jaramillo's life expectancy.

**B. Diabetic Care**

As mentioned above, Plaintiff's Motion [Doc. 126] only seeks to exclude Dr. Pandya's testimony regarding the life expectancy of Mr. Jaramillo. [Doc. 126] However, at the November 22, 2013, Daubert hearing Plaintiff's counsel expanded her objection

9

indicating that she was in fact seeking to exclude Dr. Pandya's testimony in its entirety. [Daubert Hearing Transcript 11-22-13, 14:16-16:11] Plaintiff asserts that Dr. Pandya's diabetic care testimony should be excluded because he is not requesting compensation for his diabetic care and, other than the dispute regarding whether the pneumococcal vaccine should have been given to Mr. Jaramillo in light of his diabetes, there is no dispute regarding whether the diabetic care Mr. Jaramillo received was appropriate. [Daubert Hearing Transcript 11-22-13, 15:11-15:12; 14:16-16:11]

In response, Defendants assert that Dr. Pandya's testimony regarding the diabetic care Mr. Jaramillo received is relevant to Plaintiff's claims regarding the alleged systematic problems of the medical department. [Daubert Hearing Transcript 11-22-13, 15:22-15:25] Defendants assert that Dr. Pandya's opinions regarding diabetes will show that Mr. Jaramillo's diabetes was very well managed, which will provide an understanding regarding the risk factors he had for contracting pneumonia. [Daubert Hearing Transcript 11-22-13, 16:3-16:7] Moreover, Defendants contend that Dr. Pandya's opinion regarding Mr. Jaramillo's diabetes is relevant because Mr. Jaramillo's medical condition is at issue in the litigation. [Daubert Hearing Transcript 11-22-13, 16:3-16:4]

Dr. Pandya, in her expert report, opined that the diabetic care that Mr. Jaramillo received while in Defendants' care "[was] consistent with the recommendations made by the American Diabetes in 2007, as well as those of the [CCA,] which were in effect beginning in [2006]." [Doc. 126-1 at 4] She further noted that his diabetic flow sheet was well-maintained, and that he was established in the Chronic Care Clinic for persons

10

with diabetes, chronic infections, and cardio-pulmonary conditions. [Doc. 126-1] In forming her opinion regarding diabetic care, Dr. Pandya relied on <u>Diabetes Care Supplement: Clinical Practice Recommendations for Diabetes Mellitus</u>, January 2007, as well as <u>Williams' Textbook of Endocrinology</u>, (2004).   [<u>Daubert</u> Hearing Transcript 44:17-44:22; Doc. 126-1]

As previously noted, whether an expert is qualified to provide his or her expert opinion at trial requires the Court to engage in a two-step inquiry in which the Court determines first, whether the expert's proffered testimony has "a reliable basis in the knowledge and experience of his [or her] discipline." <u>Daubert</u>, 509 U.S. at 592. In making this determination, the district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid." <u>Daubert</u>, 509 U.S. at 592–93. Second, the district court must determine whether the proposed testimony is sufficiently "relevant to the task at hand." <u>Daubert</u>, 509 U.S. at 597.

Dr. Pandya is board certified in endocrinology and metabolism, which is the "diagnosis, management and treatment of hormonal disorders . . . [which] can range from pituitary disease, thyroid disease, diabetes, . . . [to] renal disease. . .." [<u>Daubert</u> Hearing Transcript 44:6-44:12] Dr. Pandya has written numerous articles and given many talks on diabetes, as well as on the management of diabetes in the long-term care setting. [Doc. 147-1] Dr. Pandya testified that she has treated patients similar to Mr. Jaramillo. [<u>Daubert</u> Hearing Transcript 57:8-57:13] Specifically, she has treated patients who have suffered from meningitis, diabetes, non-acute pneumococcal meningitis, sepsis, renal failure

following sepsis, pressure sores, as well as patients who are entirely debilitated. [Daubert Hearing Transcript 58:13-60:12] The Court concludes that based on Dr. Pandya's knowledge, skill, experience, training, and education she is qualified to provide an expert opinion regarding the management and treatment of Mr. Jaramillo's diabetes. However, the Court's inquiry does not end here as it must determine that such testimony is sufficiently relevant to the task at hand and would be helpful to the jury.

Based on the proffers by counsel at the Daubert hearing, there is no dispute between the parties that the management and treatment of Mr. Jaramillo's diabetes was adequate. However, there is a dispute between the parties regarding whether the administration of the pneumococcal vaccine is a necessary factor to be considered when examining the adequacy of diabetic care.

In this regard, Defense counsel asserts that the two concepts can be broken down into 1) whether the care Mr. Jaramillo received to treat and manage his diabetes was adequate, and 2) whether or not he should have received the pneumococcal vaccine in the correctional setting. Thus, Defense counsel is offering Dr. Pandya to testify as to the adequacy of Mr. Jaramillo's diabetic care without taking into consideration whether or not the pneumococcal vaccine should have been administered as a component of that care. Defense counsel is offering Dr. David L. Thomas to testify regarding "the issue of pneumococcal vaccination and whether it should have been given [to] this patient related to

a correctional health setting and the standard of care in a correctional health setting."[3]

Plaintiff's counsel, on the other hand, contends that the issue regarding diabetic care, and the management of diabetes in the correctional setting, which Plaintiff's counsel submits requires pneumococcal immunization, cannot be separated. [Daubert Hearing Transcript 48:4-48:6]   The Court is persuaded by Plaintiff on this point.   Because the issue surrounding the management and treatment of Mr. Jaramillo's diabetic condition, i.e., control of his blood sugar levels, and the like, are not at issue in this case, Dr. Pandya's testimony regarding the treatment of Mr. Jaramillo's diabetic condition, i.e., his blood sugar levels, and the like will not be helpful to the trier of fact. Moreover, Defendants will be calling Dr. Thomas to address the vaccination issue and whether it should have been given to Mr. Jaramillo in light of his being in a correctional health setting, as well as the standard of care in a correctional health setting.   For these reasons, Dr. Pandya's testimony regarding the narrow issue of the management and treatment of Mr. Jaramillo's diabetic care will not assist the trier of fact and shall be excluded.

## IV.   CONCLUSION

Although Dr. Pandya has the knowledge, skill, experience, training, and education to satisfy Rule 702, the Court finds that any testimony from Dr. Pandya regarding the management and treatment of Mr. Jaramillo's diabetes will not be helpful to the trier of fact, and shall not be admitted. However, the Court's ruling on all issues addressed above

---

3  At the Daubert hearing Defense counsel stated : "We have three experts witnesses in this case, Your Honor. Dr. Thomas has been hired to specifically address the issue of pneumococcal vaccination and whether it should have been given in this patient related to a correctional health setting and the standard of care in a correctional health setting." [Daubert Hearing Transcript 46:17-47:23]

are subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial.

**IT IS, THEREFORE, ORDERED** that *Plaintiff's Daubert Motion to Exclude Expert Testimony of Naushira Pandya, M.D., CMD* [Doc. 126] is **GRANTED**.

**SO ORDERED** this 6th day of May, 2014, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
Chief United States District Judge